UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

AMS ASSOCIATES INC. d/b/a Shapiro
Packaging,

          Plaintiff/Counter-Defendant,

    vs.

FLEXITUFF INTERNATIONAL LTD.,

        Defendant/Counter-Plaintiff.

Civ. No. 12-cv-55
Hon. Robert J. Jonker

| | |
|---|---|
| Stephen P. Afendoulis (P36546)<br>Bryan R. Walters (P58050)<br>VARNUM LLP<br>Bridgewater Place, P.O. Box 352<br>Grand Rapids, MI 49501-0352<br>(616) 336-6000<br>*spafendoulis@varnumlaw.com*<br>*brwalters@varnumlaw.com*<br>Attorneys for Plaintiff/Counter-Defendant | G. Thomas Williams (P53734)<br>MCGARRY BAIR PC<br>32 Market Ave., SW, Ste. 500<br>Grand Rapids, MI 49503<br>(616) 742-3500<br>*gtw@mcgarrybair.com*<br><br>John J. Hay<br>SALANS LLP<br>Rockefeller Center<br>620 Fifth Avenue<br>New York, NY 10020<br>(212) 632-5500<br>*jhay@salans.com*<br>Attorneys for Defendant/Counter-Plaintiff |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant/Counter-Plaintiff Flexituff International Ltd. ("Flexituff"), by and through its

attorneys, states for its answer to Plaintiff's Amended Complaint as follows:

## SUMMARY OF THE CASE

1.     This case is a contract dispute concerning packaging (bags) bought by Shapiro

Packaging from Flexituff.  Beginning in September 2010 Shapiro Packaging issued a series of

approximately 18 purchase orders to Flexituff for over 2.7 million bags used to package dog food

sold by Shapiro Packaging's customer, Dad's Pet Care ("Dad's").  The purchase orders specified

the UPC number to be printed on the bags.  Flexituff printed the bags with the wrong UPC

barcodes. Flexituff became aware that the bags had been printed with the wrong UPC barcodes in January 2011 after the bags had been produced and shipped, when Walmart stores selling Dad's dog food began reporting that the UPC barcodes were scanning incorrectly.

An error by Flexituff in its manufacturing and quality control process caused the bags to be printed with the wrong UPC barcodes. Shapiro Packaging had approved artwork for the bags with the correct UPC barcodes, and Flexituff had produced samples with the correct UPC barcodes. However, **after the samples were approved by Shapiro Packaging**, Flexituff made a change to its printing cylinder supplier to attempt to improve the color quality on the bags being printed. Flexituff provided its new printing cylinder supplier with artwork that had the wrong UPC barcodes and did not send Shapiro Packaging a new sample to be reviewed before beginning mass printing of the bags. This resulted in Flexituff in printing the bags with incorrect UPC barcodes.

Shapiro Packaging has suffered hundreds of thousands of dollars in damages as a result of Flexituff's failure to print the bags in accordance with the requirements in the parties' contracts. Initially, Shapiro Packaging incurred damages as a consequence of having to sort Walmart's inventory of packaged Dad's dog food and place new UPC stickers on each bag. When Walmart was not satisfied with this solution, Shapiro Packaging then incurred the cost of pulling bags from Walmart's stores, buying new bags, and rebagging Dad's dog food into the new bags. Walmart also charged a supplier penalty to Dad's over the issue, which Dad's has in turn charged back to Shapiro Packaging. Shapiro Packaging also had its reputation damaged and has lost goodwill because of this issue. Flexituff is responsible for all of the damages suffered by Shapiro Packaging resulting from this issue.

**<u>ANSWER:</u>** **As to the first paragraph of Paragraph 1, denied as untrue, except admitted (i) that this is a contract dispute; (ii) that Shapiro Packaging ("Shapiro") issued purchase orders to Flexituff for bags to package dog food; (iii) that Flexituff printed the bags; (iv) that after Flexituff had produced the bags and delivered them to Shapiro, and after Shapiro had inspected, accepted, and paid for the bags, Shapiro reported to Flexituff that UPC barcodes on certain of the bags were scanning incorrectly. Flexituff lacks knowledge or information sufficient to form a belief about reports from Walmart stores.**

**As to the second paragraph of Paragraph 1, denied as untrue, except admitted (i) that Shapiro approved artwork for the bags; (ii) that, at Shapiro's request, Flexituff made a change to its printing cylinders to improve the color quality on the bags; (iii) that several months after Shapiro reviewed and approved sample bags printed with the new cylinders,**

took delivery of the bags printed with the new cylinders, accepted the bags, and paid for them, Shapiro informed Flexituff that the bags contained incorrect UPC barcodes.

As to the third paragraph of Paragraph 1, denied as untrue, except Flexituff lacks knowledge or information sufficient to form a belief as to damages allegedly suffered by Shapiro.

## JURISDICTION AND VENUE

2.      Plaintiff/Counter-Defendant, AMS Associates Inc., d/b/a Shapiro Packaging ("Shapiro Packaging"), is a Michigan corporation with its principal place of business in Grand Rapids, Michigan.

**ANSWER:      Flexituff lacks knowledge sufficient to admit or deny the allegations contained in Paragraph 2.**

3.      Defendant/Counter-Plaintiff, Flexituff International Ltd. ("Flexituff"), is an India public limited company with its principal place of business in Pithampur, Dist. Dhar. 454775, Madahya Pradesh.

**ANSWER:      Admitted.**

4.      This Court has personal jurisdiction over Defendant/Counter-Plaintiff.

**ANSWER:      Paragraph 4 asserts a legal conclusion to which no response is required.**

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a state and citizens or subjects of a foreign state.

**ANSWER:      Paragraph 5 asserts a legal conclusion to which no response is required, but to the extent a response is required, Flexituff admits that Shapiro purports to seek an amount that exceeds $75,000 exclusive of interest and costs, that Shapiro has alleged it is a citizen of a state, and that Flexituff is a subject of a foreign state.**

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

**ANSWER:      Paragraph 6 asserts a legal conclusion to which no response is required.**

NewYork 1514983.2

## FACTUAL ALLEGATIONS

7.   Plaintiff/Counter-Defendant restates its allegations in paragraphs 1 through 6 of the Amended Complaint as though set forth here in their entirety.

**ANSWER:   Flexituff incorporates its answers to Paragraphs 1 through 6 as though set forth here in their entirety.**

8.   Dad's Pet Care ("Dad's") sells 20 lb. and 40 lb. bags of dog food under the "Ol' Roy Kibbles Chunks 'n Chews" ("Ol' Roy") trade name.

**ANSWER:   Flexituff lacks sufficient knowledge to admit or deny the allegation contained in Paragraph 8.**

9.   Dad's also sells 17.6 lb. bags of dog food under the "Econ-O-Mets" trade name.

**ANSWER:   Flexituff lacks sufficient knowledge to admit or deny the allegation contained in Paragraph 9.**

10.   Shapiro Packaging previously subcontracted the manufacture of the bags to a company in China, but made the decision in the summer of 2010 to change vendors.

**ANSWER:   Flexituff lacks sufficient knowledge to admit or deny the allegation contained in Paragraph 10.**

11.   Shapiro Packaging entered into several contracts with Dad's under which Shapiro Packaging was to supply Dad's with bags to pack 20 lb. and 40 lb. quantities of Ol' Roy dog food and 17.6 lb. quantities of Econ-O-Mets dog food.  Ex. 1.

**ANSWER:   Flexituff lacks sufficient knowledge to admit or deny the allegation contained in Paragraph 11.**

12.   On or about September 1, 2010, Shapiro Packaging provided Flexituff with artwork for both the 20 lb. and 40 lb. Ol' Roy packaging. The artwork included a "dummy" UPC barcode with the designation "FPO" ("For Placement Only") over the barcode. This showed where the UPC barcode was to be placed on the bag and indicated that the UPC barcode in the artwork was "For Placement Only" and was not the actual UPC barcode for the bags.  Ex. 2.

**ANSWER:   Denied, except Flexituff admits that the artwork included a UPC barcode.**

-4-

13.     On or about September 3, 2010, Shapiro Packaging provided Flexituff with artwork for the 17.6 lb. Econ-O-Mets packaging. As with the Ol' Roy artwork, the artwork for the Econ-O-Mets bags included a "dummy" UPC barcode with the designation "FPO" ("For Placement Only") over the barcode. This showed where the UPC barcode was to be placed on the bag and indicated that the UPC barcode in the artwork was "For Placement Only" and was not the actual UPC barcode for the bags. **Ex. 3.**

**ANSWER:**     **Denied, except Flexituff admits that the artwork included a UPC barcode.**

14.     On or about September 3, 2010, Shapiro Packaging issued its first purchase order to Flexituff for 20 lb. and 40 lb. Ol' Roy bags.  The purchase order identified the actual UPC number to be printed on each bag. **Ex. 1.**

**ANSWER:**     **Admitted, except denies that the purchase order was intended to specify the UPC barcode to be printed on each bag.**

15.     On or about September 4, 2010, Shapiro Packaging issued its first purchase order to Flexituff for Econ-O-Mets bags. The purchase order identified the actual UPC number to be printed on each bag. *Id.*

**ANSWER:**     **Admitted, except denies that the purchase order was intended to specify the UPC barcode to be printed on each bag.**

16.     On or about September 7, 2010, Flexituff sent Shapiro Packaging a PDF file with Flexituff's rendition of the artwork for both the 20 lb. and 40 lb. bags of Ol' Roy. Flexituff generated the correct UPC barcodes in their artwork, such that Flexituff's rendition included the correct UPC barcodes.  Shapiro Packaging scanned the UPC barcodes from the artwork provided by Flexituff and confirmed that the UPC barcodes scanned correctly.  **Ex. 4.**

**ANSWER:**     **Denied, except admits that the PDF file sent to Shapiro contained the correct barcodes, and denies knowledge sufficient to admit or deny that Shapiro scanned the UPC barcodes from the artwork provided by Flexituff and confirmed that the UPC codes scanned correctly.**

17.     On or about September 8 and 9, 2010, Shapiro Packaging issued revised purchase orders for both the Ol' Roy and Econ-O-Mets bags. The revisions changed the shipping terms, quantities, and prices for the bags. The actual UPC number was not revised and was also included on these revised purchase orders. **Ex. 1.**

NewYork 1514983.2

**ANSWER:** Admitted, except denies that the purchase order was intended to specify the

**UPC barcode to be printed on each bag.**

18.     On or about September 9, 2010, Flexituff provided Shapiro Packaging with revised PDFs of Flexituff's rendition of the artwork for both the 20 lb. and 40 lb. Ol' Roy packaging, making several corrections requested by Shapiro Packaging.  Shapiro Packaging again scanned the UPC barcodes from the artwork and confirmed that the UPC codes were correct. Based on this, Shapiro Packaging approved the artwork. **Ex. 5.**

**ANSWER:** Denied, except admits that Flexituff provided Shapiro with revised artwork

**as requested by Shapiro, and denies knowledge sufficient to admit or deny the basis on**

**which Shapiro approved the artwork or that Shapiro scanned the UPC barcodes from the**

**artwork and confirmed that the UPC codes were correct.**

19.     On or about September 10, 2010, Flexituff provided Shapiro Packaging with PDFs of Flexituff's rendition of the artwork for the Econ-O-Mets packaging. Flexituff's rendition included the correct UPC barcode. Shapiro Packaging scanned the UPC barcode from the artwork and confirmed that the UPC barcode was correct. Based on this, Shapiro Packaging approved the artwork. **Ex. 6.**

**ANSWER:** Denied, except admits that Flexituff provided Shapiro with artwork for the

**Econ-O-Mets packaging, and denies knowledge sufficient to admit or deny the basis on**

**which Shapiro approved the artwork or that Shapiro scanned the UPC barcodes from the**

**artwork and confirmed that the UPC code was correct.**

20.     On or about September 22, 2010, Shapiro Packaging received from Flexituff the "film proof" of the 20 lb. Ol' Roy package created by Flexituff. Shapiro Packaging once again scanned the UPC barcode on the "film proof" and confirmed that the UPC barcode was correct. **Ex. 7.**

**ANSWER:** Denied, except admits that Shapiro received from Flexituff the film proof of

**the 20 lb. Ol' Roy package, and denies knowledge sufficient to admit or deny that Shapiro**

**scanned the UPC barcode on the film proof and confirmed that the UPC barcode was**

**correct.**

NewYork 1514983.2

21. On or about September 22, 2010, Shapiro Packaging received from Flexituff the "film proof" of the 17.6 lb. Econ-O-Mets package created by Flexituff. Shapiro Packaging once again scanned the UPC barcode on the "film proof" and confirmed that the UPC barcode was correct. **Ex. 8**.

**ANSWER:** **Denied, except admits that Shapiro received from Flexituff the film proof of the 17.6 lb. Econ-O-Mets package, and denies knowledge sufficient to admit or deny that Shapiro scanned the UPC barcode on the film proof and confirmed that the UPC barcode was correct.**

22. On or about September 28, 2010, Shapiro Packaging received the film proof for the 40 lb. Ol' Roy package from Flexituff. Shapiro Packaging once again scanned the UPC barcode on the "film proof" and confirmed that the UPC barcode was correct. **Ex. 9**.

**ANSWER:** **Denied, except admits that Shapiro received from Flexituff the film proof of the 40 lb. Ol' Roy package, and denies knowledge sufficient to admit or deny that Shapiro scanned the UPC barcode on the film proof and confirmed that the UPC was correct.**

23. On or about October 7 and 8, 2010, Michael Shapiro of Shapiro Packaging was onsite at Flexituff's plant in India and saw a print run of the 20 lb. Ol' Roy bags. Mr. Shapiro personally checked the print run to confirm that the UPC barcode on the bags was correct.

**ANSWER:** **Admitted.**

24. On or about October 14, 2010, Flexituff informed Shapiro Packaging that Flexituff was concerned about the color quality on the 20 lb. Ol' Roy bags. Flexituff told Shapiro Packaging that Flexituff wanted to obtain new cylinders to print the Ol' Roy bags with better color quality. Flexituff asked for permission to ship the bags it had already printed. Shapiro Packaging granted permission to ship the bags already printed. These bags were shipped. **These bags had the proper UPC barcodes printed on them**.

**ANSWER:** **Admitted, except denies to the extent that Paragraph 24 implies it was Flexituff, rather than Shapiro, that was concerned about the color quality on the 20 lb. Ol' Roy bags, and that Flexituff, rather than Shapiro, determined that it was necessary to obtain new cylinders.**

25. Upon information and belief, Flexituff decided to switch manufacturers for the new cylinders for both the Ol' Roy and Econ-O-Mets printing processes.

-7-

**ANSWER:** **Denied.**

26.     Upon information and belief, during Flexituff's process of obtaining new cylinders for a new manufacturer, Flexituff erroneously gave their new cylinder manufacturer the artwork for the Ol' Roy and Econ-O-Mets bags from September 1 and 3, 2010, with the "dummy" UPC barcodes that were "For Placement Only." As a result, the cylinders were created with the "dummy" UPC barcode. Flexituff failed to check that the new cylinders were printing the correct UPC barcodes before starting mass production. Flexituff proceeded to manufacture and ship bags with the "dummy" UPC barcodes printed on them.

**ANSWER:** **Admitted, except denies that it was an error for Flexituff to provide its new**

**cylinder manufacturer the artwork provided by Shapiro on or about September 1 and 3,**

**2010, and denies to the extent Paragraph 26 implies that Shapiro itself did not have the**

**opportunity and obligation to inspect the UPC barcodes.**

27.     On or about January 20, 2011, Dad's reported to Shapiro Packaging that Dad's was receiving complaints from Walmart that the UPC barcodes on Ol' Roy bags were not scanning correctly. The following day, Dad's also reported that the UPC barcodes on the Econ-O-Mets bags were also not scanning correctly.

**ANSWER:** **Flexituff lacks sufficient knowledge to admit or deny the allegations**

**contained in Paragraph 27.**

28.     Shapiro Packaging has suffered damages as a result of Flexituff's defective manufacture of the bags, including, but not limited to, the following:

a.     Costs to sort inventory and resticker the UPC barcodes on bags;

b.     Costs to remove the bags from stores and rebag product into new bags;

c.     Costs to obtain new bags, including air freight for new bags;

d.     Penalties charged relating to the defectively manufactured bags;

e.     Lost profit;

f.     Lost employee productivity;

g.     Loss of goodwill and harm to business reputation; and

h.     Other direct, incidental, and consequential damages to be determined.

**ANSWER:** **Denied.**

## COUNT I: BREACH OF CONTRACT

29.    Plaintiff/Counter Defendant restates its allegations in paragraphs 1 through 28 of the Amended Complaint as though set forth there in their entirety.

**ANSWER:    Flexituff incorporates its answers to Paragraphs 1 through 28 as though set forth here in their entirety.**

30.    Plaintiff/Counter-Defendant and Defendant/Counter-Plaintiff entered into one or more contracts.

**ANSWER:    Paragraph 30 asserts a legal conclusion to which no response is required, but to the extent a response is required, admitted.**

31.    Defendant/Counter-Plaintiff breached one or more of those contracts.

**ANSWER:    Paragraph 31 asserts a legal conclusion to which no response is required, but to the extent a response is required, denied.**

32.    Plaintiff/Counter-Defendant has been damaged as a result.

**ANSWER:    Denied.**

WHEREFORE, Plaintiff/Counter-Defendant seeks damages in an amount in excess of $75,000, along with costs, interest, attorneys' fees, and any other relief to which it is entitled.

**ANSWER:    Denied that Shapiro is entitled to the relief sought.**

## COUNT II: BREACH OF EXPRESS WARRANTY

33.    Plaintiff/Counter-Defendant restates its allegations in paragraphs 1 through 32 of the Amended Complaint as though set forth here in their entirety.

**ANSWER:    Flexituff incorporates its answers to Paragraphs 1 through 32 as though set forth here in their entirety.**

34.    Plaintiff/Counter-Defendant and Defendant/Counter-Plaintiff entered into one or more contracts for the sale of goods governed by the Uniform Commercial Code.

**ANSWER:    Paragraph 34 asserts a legal conclusion to which no response is required, but to the extent a response is required, admitted.**

NewYork 1514983.2

35.     Pursuant to MCL § 440.2313, Defendant/Counter-Plaintiff made one or more express warranties concerning the goods.

**ANSWER:     Paragraph 36 asserts a legal conclusion to which no response is required, but to the extent a response is required, denied.**

36.     Defendant/Counter-Plaintiff breached one or more of those express warranties.

**ANSWER:     Paragraph 37 asserts a legal conclusion to which no response is required, but to the extent a response is required, denied.**

37.     Plaintiff/Counter-Defendant has been damaged as a result.

**ANSWER:     Denied.**

WHEREFORE, Plaintiff/Counter-Defendant seeks damages in an amount in excess of $75,000, along with costs, interest, attorneys' fees, and any other relief to which it is entitled.

**ANSWER:     Denied that Shapiro is entitled to the relief sought.**

## COUNT III: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

38.     Plaintiff/Counter-Defendant restates its allegations in paragraphs 1 through 37 of the Amended Complaint as though set forth here in their entirety.

**ANSWER:     Flexituff incorporates its answers to Paragraphs 1 through 37 as though set forth here in their entirety.**

39.     Plaintiff/Counter-Defendant and Defendant/Counter-Plaintiff entered into one or more contracts for the sale of goods governed by the Uniform Commercial Code.

**ANSWER:     Flexituff incorporates its answer to Paragraphs 34 as though set forth here in its entirety.**

40.     Pursuant to MCL 440.2314, the goods are subject to an implied warranty of merchantability.

**ANSWER:     Paragraph 40 asserts a legal conclusion to which no response is required.**

41.     Defendant/Counter-Plaintiff breached the implied warranty of merchantability.

-10-

**ANSWER:** Paragraph 41 asserts a legal conclusion to which no response is required, but to the extent a response is required, denied.

    42.    Plaintiff has been damaged as a result.

**ANSWER:** Denied.

    WHEREFORE, Plaintiff/Counter-Defendant seeks damages in an amount in excess of $75,000, along with costs, interest, attorneys' fees, and any other relief to which it is entitled.

**ANSWER:** Denied that Shapiro is entitled to the relief sought.

## COUNT IV: BREACH OF IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE

    43.    Plaintiff/Counter-Defendant restates its allegations in paragraphs 1 through 42 of the Amended Complaint as though set forth here in their entirety.

**ANSWER:** Flexituff incorporates its answers to Paragraphs 1 through 42 as though set forth here in their entirety.

    44.    Plaintiff/Counter-Defendant and Defendant/Counter-Plaintiff entered into one or more contracts for the sale of goods governed by the Uniform Commercial Code.

**ANSWER:** Flexituff incorporates its answer to Paragraphs 34 as though set forth here in its entirety.

    45.    Pursuant to MCL 440.2315, Defendant/Counter-Plaintiff warranted that the bags were fit for the particular purpose for which they were manufactured.

**ANSWER:** Paragraph 45 asserts a legal conclusion to which no response is required, but to the extent a response is required, denied.

    46.    Defendant/Counter-Plaintiff breached the implied warranty of fitness for a particular purpose.

**ANSWER:** Paragraph 46 asserts a legal conclusion to which no response is required, but to the extent a response is required, denied.

    47.    Plaintiff/Counter-Defendant has been damaged as a result.

-11-

**ANSWER:**    Denied.

WHEREFORE, Plaintiff/Counter-Defendant seeks damages in an amount in excess of $75,000, along with costs, interest, attorneys' fees, and any other relief to which it is entitled.

**ANSWER:**    **Denied that Shapiro is entitled to the relief sought.**

**WHEREFORE, Flexituff seeks dismissal of Shapiro's Amended Complaint in its entirety and requests that this Court award Flexituff its costs and attorney's fees, and any other relief to which Flexituff may be entitled.**

## AFFIRMATIVE DEFENSES

Flexituff may rely on some or all of the following affirmative defenses:

1.    Flexituff's performance under the contract or contracts between the parties was excused by Shapiro's prior breaches, including providing the wrong barcode and failing to adequately inspect the bags Flexituff sent to Shapiro, as Shapiro was obligated to do.

2.    Shapiro's damages, if any, were caused in whole or in part by its own negligence.

3.    Flexituff's liability, if any, is limited by its Claims Policy, a copy of which was provided to Shapiro, and which formed part of the contract or contracts between the parties.

4.    Shapiro's claims are barred because Shapiro and Flexituff entered into an accord and satisfaction to resolve any dispute that may have existed between them as set forth in the Amended Complaint.

5.    Shapiro had an opportunity to inspect and did inspect sample bags produced by Flexituff, and Shapiro authorized Flexituff to proceed with production after inspecting the samples.

6.  Shapiro accepted the bags produced by Flexituff, and Shapiro did not revoke its acceptance.

7.  Shapiro's claims are barred by the doctrines of waiver and/or estoppel.

8.  To the extent Shapiro seeks recovery of any supplier penalty, including but not limited to Walmart's supplier penalty, such damages are consequential damages for which Shapiro is not entitled to recovery.

9.  Shapiro failed to mitigate its damages.

10.  Shapiro has failed to state a claim on which relief may be granted.

11.  Flexituff reserves the right to add other affirmative defenses as they are discovered.

## COUNTERCLAIM

Defendant/Counter-Plaintiff Flexituff states for its counterclaim as follows:

## SUMMARY OF THE CASE

1.    Flexituff is a manufacturer of high-quality bags for a variety of industrial and consumer uses.  In or about 2010, Flexituff and Shapiro entered into a contract under which Flexituff agreed to supply bags to Shapiro.  Pursuant to the contract between the parties, when Shapiro wanted to order bags from Flexituff, it would issue a purchase order to Flexituff. Flexituff would then provide sample bags to Shapiro, which Shapiro was required to inspect and approve.  After receiving approval from Shapiro, Flexituff would fill the order and issue an invoice to Shapiro for payment.

Under the contract, Flexituff filled numerous purchase orders from Shapiro.  In January 2011, Flexituff learned that certain dog food bags it had produced for Shapiro were printed with the wrong UPC barcodes, despite the fact that the bags had previously been approved by Shapiro after Shapiro had an opportunity to inspect them.  Shapiro's failure to provide Flexituff with the correct UPC barcodes and failure to inspect the bags (or improper inspection of the bags) constituted breaches of the parties' contract.  Flexituff repaired the bags, in the process incurring substantial costs.  In addition, beginning in March 2011, Shapiro began improperly withholding certain amounts owed to Flexituff pursuant to invoices Flexituff sent to Shapiro.

Shapiro is liable to Flexituff for the costs Flexituff incurred repairing the dog food bags that Shapiro failed to inspect or inspect properly.  Shapiro is also liable to Flexituff for the amounts it improperly withheld from the Shapiro invoices from March 2011 onward.

-14-

## PARTIES, JURISDICTION, AND VENUE

2.     Counter-Plaintiff Flexituff is an Indian public limited company with its principal place of business in Pithampur, Dist. Dhar. 454775, Madahya Pradesh.

3.     Counter-Defendant Shapiro is a Michigan corporation with its principal place of business in Grand Rapids, Michigan.

4.     Venue is proper in this district pursuant to 28 U.S.C. 1391(a)(1) as Counter-Defendant is a resident of this district and all defendants reside in the same state.

5.     This Court has subject matter jurisdiction pursuant to 28 USC 1332(a)(2) as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of a state and citizens or subjects of a foreign state.

## FACTUAL ALLEGATIONS

6.     In 2010, the parties entered into a contract under which Flexituff agreed to fill orders from Shapiro for the production of bags.  The parties' agreement required Flexituff to provide specifications of the material to be printed on the bags.  Under the contract, Shapiro was further required to inspect and approve samples of the bags it ordered from Flexituff.  Flexituff's Claims Policy, which limits any liability Flexituff may have to Shapiro, formed part of the contract between Flexituff and Shapiro.

7.     Beginning in September 2010, Shapiro issued purchase orders to Flexituff for the production of certain dog food bags ("Bags").

8.     In or about September 2010, Shapiro provided Flexituff with specifications of the material to be printed on the Bags. Unbeknownst to Flexituff, the specifications provided by Shapiro contained the wrong UPC barcodes.

9.     In January 2011, Shapiro notified Flexituff for the first time that the Bags, which Flexituff had shipped to Shapiro, and which Shapiro accepted and paid for, had the wrong UPC barcodes on them.

10.    The news came as a surprise to Flexituff, because Flexituff had sent sample bags ("Samples") to Shapiro before producing the Bags.

11.    The Samples that Flexituff provided bore the same UPC barcode as the Bags.

12.    On information and belief, Shapiro failed to adequately inspect the Samples.

13.    Despite its failure to adequately inspect the Samples, Shapiro nonetheless authorized and directed Flexituff to manufacture the Bags.

14.    In order to repair the Bags, Flexituff placed stickers with the correct UPC barcodes over the UPC barcodes on the Bags.

15.    Flexituff performed the repair work at its facility in India, as well as at a facility in the United States.

16.    The repair work in the United States cost in excess of $283,000.00.

17.    The repair work in India cost in excess of $241,000.00.

-16-

18.     In addition to the purchase orders for the Bags, Shapiro issued additional purchase orders to Flexituff pursuant to the parties' contract.

19.     Flexituff filled the orders and issued invoices to Shapiro for payment.

20.     On or about March 18, 2011, Shapiro made payment on 14 invoices ("March 18 Invoices") for bags Flexituff provided pursuant to the parties' contract, with a total amount due of $362,943.92.  However, Shapiro improperly withheld $290,434.42 on the March 18 Invoices and paid only $72,509.50.

21.     On or about April 5, 2011, Shapiro made payment on 7 invoices ("April 5 Invoices") for bags Flexituff provided pursuant to the parties' contract, with a total amount due of $100,599.33.  However, Shapiro improperly withheld $11,508.93 on the April 5 Invoices and paid only $89,090.40.

22.     On or about May 5, 2011, Shapiro made payment on 10 invoices ("May 5 Invoices") for bags Flexituff provided pursuant to the parties' contract, with a total amount due of $86,986.11.  However, Shapiro improperly withheld $3,821.21 on the May 5 Invoices and paid only $83,164.90.

23.     On or about May 25, 2011, Shapiro made payment on 1 invoice ("May 25 Invoice") for bags Flexituff provided pursuant to the parties' contract, with a total amount due of $44,866.75.  However, Shapiro improperly withheld $975.00 on the May 25 Invoice and paid only $43,891.75.

NewYork 1514983.2

## COUNT I: BREACH OF CONTRACT

24.      Flexituff repeats and realleges the allegations contained in Paragraphs 1-23 above as if set forth at length herein.

25.      The parties entered into a contract.

26.      Shapiro breached the contract between the parties by providing Flexituff with specifications containing the wrong UPC barcodes.

27.      Shapiro breached the contract between the parties by failing to inspect or properly inspect the Samples.

28.      Shapiro further breached the contract by failing to pay the full amounts due on the March 18 Invoices, the April 5 Invoices, the May 5 Invoices, and the May 25 Invoice.

29.      Flexituff has been harmed as a result of Shapiro's breaches.

NewYork 1514983.2

WHEREFORE, Flexituff seeks damages in an amount in excess of $831,410.00, along with costs, interest, attorney's fees, and any other relief to which it is entitled.

Respectfully submitted,

Date:   May 14, 2012

SALANS LLP

By: _____
       John J. Hay
Rockefeller Center
620 Fifth Avenue
New York, NY 10020
(212) 632-5500
*jhay@salans.com*

G. Thomas Williams
MCGARRY BAIR PC
32 Market Ave., SW, Ste. 500
Grand Rapids, MI 49503
(616) 742-3500
*gtw@mcgarrybair.com*

Attorneys for Flexituff International Ltd.

-19-